# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

     v.

SHAQUANE SCOTT,

         Defendant

CRIMINAL NO. 3:19-CR-00263

(MANNION, D.J.)
(MEHALCHICK, M.J.)

## MEMORANDUM

This matter comes before the Court on Defendant's Motion to Review Detention Order Based on Changed Circumstances. (Doc. 41). Defendant, Shaquane Scott, moves this Court to reopen the detention hearing in this matter due to changed circumstances – the COVID-19 pandemic and a proposed suitable release plan and third-party custodian. (Doc. 41, at ¶ 5; Doc. 42).  The Government opposes this motion. (Doc. 43).

I.    BACKGROUND AND PROCEDURAL HISTORY

On September 17, 2019, Scott was charged by Indictment with three counts of distribution and possession with intent to distribute methamphetamine, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Doc. 1). Scott appeared before this Court for his initial appearance and arraignment on September 24, 2019, at which time the Court scheduled a detention hearing for September 27, 2019. Following that hearing, the Court held that Scott did not present sufficient evidence to rebut the presumption pursuant to 18 U.S.C. §

3142(e)(3)[1] and further, that detention was warranted based on consideration of the factors to be considered under the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the danger to the community should he be released. In particular, the Court noted that the weight of the evidence is strong, Scott is subject to a lengthy period of incarceration if convicted, he has a history of criminal activity while on probation, parole, or supervision, he lacks stable employment and residence, and he has previously failed to appear in court as required. (Doc. 23).

Scott is currently housed at Lackawanna County Prison. On April 13, 2020, Scott, through counsel, filed a motion to review detention,[2] due to the changed circumstances presented by the COVID-19 pandemic and presenting a potential third-party custodian for the first time. Scott, who is 31 years old, suffers from high blood pressure and anxiety.[3] (Doc. 41).

---

[1] Under the Bail Reform Act, certain charges, such as those in the instant case, raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). A defendant may rebut the presumption of detention by producing "some credible evidence ... that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). The charges against Scott are serious drug trafficking charges which raise the presumption under § 3142(e)(3).

[2] Scott does not identify the statutory basis for the relief he seeks; however, his motion and brief both seek review of his detention hearing based on "changed circumstances" and therefore the Court construes the motion as one to reopen the detention hearing pursuant to § 3142(f), the subsection of the statute which references review of detention based upon new information. However, the Government also makes argument on release pursuant to § 3142(i), and the Court is thus compelled to address that subsection as well.

[3] Scott reported a diagnosis of anxiety disorder during his pretrial services interview; he did not note any diagnosis or treatment for high blood pressure.

He submits that these health conditions place him at higher risk for contracting the COVID-19 virus. Scott also argues that the virus poses a risk to him and to other inmates, and that his ability to prepare his defense and meet with counsel is impeded by the pandemic.

Counsel for Scott filed a Notice with the Court on April 13, 2020 indicating that the parties were unable to come to an agreement regarding Scott's release from detention. Scott asks the Court to conduct a hearing[4] on his motion. (Doc. 41-2).

## II.   DISCUSSION

### A.   THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[5] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[6] As of the date of this writing, there are

---

[4] The Court is able to reach its decision on this motion without a hearing, having concluded that reopening the detention hearing is not warranted, and that it can reach its decision under § 3142(i) without a hearing.

[5] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[6] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

3,435,894 confirmed cases worldwide and 239,604 deaths; in the United States, there are 1,125,719 confirmed cases and 60,710 deaths.[7] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

      B.      CONDITIONS AT LACKAWANNA COUNTY PRISON

In its brief in opposition, the Government describes and attaches the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 43, at 36-38). The prison has implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area. In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. (Doc. 43, at 36-38).

---

[7] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 4, 2020).

As of April 2, 2020, one correctional officer at the Lackawanna County Prison tested positive for the virus. According to the U.S. Marshals Service, the officer who tested positive did not have any close contact with Marshal Service Personnel, and that it is unlikely, though possible, that the officer who tested positive had close contact with federal inmates at the prison. That officer is recovered from the virus, and no other cases have been reported at the prison.

C.     RECONSIDERATION OF DETENTION ORDER PURSUANT TO § 3142(F)

Scott asks this Court to reconsider its previous detention decision based upon the new changed circumstances of the COVID-19 pandemic and because he can now offer a third-party custodian.[8] 18 U.S.C. § 3142(f) states, in pertinent part, as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

While both the COVID-19 pandemic and the offer of new release plan with a third-party custodian are new information, this information does not change the Court's finding that there is no condition or combination of conditions which would assure the safety of the community should Scott be released.

---

[8] The Government does not address Scott's proposed release plan or third-party custodian.

The charges against Scott trigger the rebuttable presumption under § 3142. In order to rebut the presumption of detention, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Santiago-Pagan*, 1:08-CR-0424-01, 2009 WL 1106814, at *4 (M.D. Pa. Apr. 23, 2009); quoting *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986). If the defendant is able to meet this burden of production, the government bears the ultimate burden of persuasion. *See United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir.1986). Even if a defendant rebuts the presumption of dangerousness or flight, however, "the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Santiago-Pagan*, 2009 WL 1106814, at *4; quoting *United States v. Farris*, No. 2:08cr145, 2008 WL 1944131, at *8 (W.D.Pa. May 1, 2008) (internal citations omitted).

The Court does not find that any of the new information proffered by Scott rebuts the presumption of detention in this case. Rebuttal of the presumption of dangerousness requires a showing that defendant's criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. The record before the Court does not reflect that Scott has a respect for the law, personal reliability, or that his criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. Further, the Court finds the proposed release plan, which the Government fails to address at all, to be entirely unacceptable and contrary to prior orders of this Court. Scott's proposed third-party custodian, Priscilla Blume, is the mother of Scott's co-defendant, Samantha Blume, with whom he has a minor child, and with whom he is prohibited from having any contact. (Doc. 33, at ¶ 5; Doc. 34). The Court has verified with Pretrial Services that Scott's codefendant, Blume, is currently residing with her mother; as such, Scott is

6

proposing to live at the same residence as his codefendant, with whom he has *twice* been told he was not permitted contact.

Even if Scott had rebutted the presumption, however, consideration of the factors under the Bail Reform Act require that he be detained pending trial, as "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In determining whether any conditions of release will be sufficient, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The COVID-19 pandemic changes neither the nature and circumstances of the charged offenses nor the weight of the evidence against Scott. This new information has no impact on the Court's determination of either of these factors, which weigh squarely in favor of continued detention. The drug charges against Scott are extremely serious. The evidence against Scott, as proffered by the Government, is substantial.

The pandemic and Scott's health have some bearing, however, on the third factor under the Bail Reform Act, the nature and characteristics of the defendant. Those "characteristics" include the physical and mental health of the defendant, and the existence and potential impact of the COVID-19 virus is a change in that particular characteristic.

7

However, it is but one characteristic contemplated by the Bail Reform Act. The balance of Scott's history and characteristics still weighs heavily in favor of detention. Scott's criminal history is lengthy, severe, and includes convictions for drug trafficking and assault. Scott was released on bail from state court charges when the underlying offenses in this matter allegedly occurred. Further, his record reflects a number of instances of failing to appear for court appointments.

Scott has a history of engaging in dangerous behavior, not complying with terms of release, and being unable to follow rules and orders of the Court. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020). Scott's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on pretrial release. *United States v. Lee*, 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). It may also place the United States Marshals Service officers at risk if re-apprehending him is necessary. *See United States v. Lunnie*, 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020).

Finally, the Court considers the fourth detention factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release.*" *Lee*, 2020 WL 1541049, at *4–5; 18 U.S.C. § 3142(g)(4) (emphases added). Scott's release, which the Court has previously determined to pose a danger to the community, now poses a greater danger. That danger now includes not only this Court's previous conclusion that he will continue to engage in the same types of unlawful and potentially dangerous

8

conduct that led to the charges in this case, but also the heightened safety risks that Scott's release poses to the probation officers tasked with monitoring his behavior if he were to be released on supervision. *Lee*, 2020 WL 1541049, at *4-5; *see also United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (motion for release denied, in part, where defendant did not convince the court that her release would not pose a danger to the community).

Based on the foregoing, the Court finds that there is nothing about the new circumstances of the COVID-19 pandemic, or Scott's proposed release plan, that has a material impact on any of the factors previously considered by this Court in determining that he should be detained. Therefore, Scott's motion to reopen the Court's detention decision pursuant to 18 U.S.C. § 3142(f) is denied.

D. TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

As noted, Scott does not identify the statutory basis for the relief he seeks, and the Court construes his motion primarily as seeking review pursuant to § 3142(f) based on changed circumstances and new information previously unavailable to the defendant. Nothing in his motion or brief suggests that Scott is seeking release under § 3142(i) except for a brief reference to the difficulty of preparing a defense during the pandemic. That section of the Bail Reform Act provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

> 18 U.S.C. § 3142(i) (emphasis added).

The Government offers that Scott "may" attempt to argue for release under this section, and spends a large portion of its brief in opposition arguing against release under § 3142(i). If he had made the argument, it would be Scott's burden to establish that release under § 3142(i) is warranted. *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). Moreover, based on the record before the Court, temporary release under § 3142(i) would not be warranted. In reviewing a § 3142(i) motion, the Court looks at (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See United States v. Veras,*, 2020 WL 1675975 (M.D. Pa. Apr. 6, 2020). These factors are particularly instructive in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act. *Veras*, 3:19-CR-010, 2020 WL 1675975, at *5-6; *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also United States v. Boatright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion denied based on analysis of *Clark* factors despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419

(D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

First, as previously stated, there is no condition or combination of conditions which could reasonably assure the safety of the community should Scott be released – Scott has failed to rebut the presumption of detention and consideration of the § 3142 factors weigh in favor detention. Second, although Scott submits that his high blood pressure and anxiety place him at greater risk of contracting the virus, nothing in the record reflects that he is not receiving necessary treatment for his conditions while in Lackawanna County Prison, or that the prison is not taking steps to mitigate his risk for infection. Although mindful of the magnitude of the COVID-19 pandemic, and the extreme health risks it presents within the jail and prison setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at *8; *see also Raia*, 2020 WL 1647922, at *2  ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Scott's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. Again, Scott proposes to reside with Priscilla Blume, the mother of Scott's co-defendant, Samantha Blume, with whom he has a minor child, and with whom he is prohibited from having any contact. (Doc. 33, at ¶ 5; Doc. 34). The proposed plan does not address any of risk factors that would arise if Scott were released from custody. *Clark,* 2020 WL at 1446895, at *6. Though not in response to the release plan, the Government has provided information on the prison's steps to address and mitigate the risks of COVID-19. Despite Scott's conclusory allegations that the

11

prison will be unable to manage care of inmates during the pandemic, the information before the Court includes the prison's actual plan to do just that. *Boatwright*, 2020 WL 1639855, at *7. Further, Scott does not address the extent to which his risks of infection could be exacerbated if he were to be released, and he does not address how his other health issues will be treated.

Finally, the Court considers the likelihood that Scott's proposed release would increase COVID-19 risks to others. The Court has previously decided that Scott should be detained, in part because he was unable to comply with other court orders, and because of his criminal history. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Scott's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on supervised release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Scott's proposed temporary release[9] plan ends, it will place the United States Marshals Service officers at risk in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

Finally, Scott also submits that his release is necessary for the preparation of his defense. Recognizing that the pandemic may pose obstacles to the preparation of a defense,

---

[9] Having determined that Scott does not establish a compelling reason for temporary release under § 3142(i), even if he had argued it, the Court will not reach what the scope of "temporary" might mean in this situation.

the Court finds that Scott has not established that the restrictions in place at Lackawanna County Prison are such that they are a compelling reason for his temporary release. First, though not ideal, the prison still allows for attorney visits, albeit through a glass window. Nothing in the measures outlined by the prison indicate that attorney visits or calls are in any other way restricted. The Court is confident that the prison will respect the privileged nature of the communications between attorneys and their clients as nothing to the contrary has been brought to its attention to cause concern. Scott has not suggested that his situation with regard to consultation with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time. *See Dodd*, 2020 WL 1547419 at *3.

## III.   CONCLUSION

The Court has considered the evidence presented by the Government and by Scott, including Scott's medical information, his proposed release plan, and the response of Lackawanna County Prison to the pandemic. However, even considering this information, the balance of the factors under the Bail Reform Act – the nature and circumstances of the offenses charged, the weight of the evidence, the history and characteristics of the defendant, and the danger to the community upon release – mandate that Scott remain detained, as there is no condition or combination of conditions that can reasonably assure the safety of the community should he be released.

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and recognizes the potential for Scott's exposure to the virus while at Lackawanna County Prison, that potential exists anywhere in the community. Lackawanna County Prison has taken steps to minimize infection. There is no evidence that Scott is not getting the medical

attention he needs. Additionally, Lackawanna County Prison has put in place protocols to allow for lawyer-client communications while also protecting against the spread of the virus.

For these reasons, Scott's motion for pretrial release (Doc. 19) is **DENIED**.

An appropriate Order will follow.


**Dated: May 4, 2020**                                     *s/ Karoline Mehalchick*

                                                           **KAROLINE MEHALCHICK**
                                                           **United States Magistrate Judge**

14